UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHRISTINE IMBRIGLIO,<br>    Plaintiff,<br><br>v.<br><br>STATE OF RHODE ISLAND, STATE OF RHODE ISLAND DEPARTMENT OF CORRECTIONS, and PATRICIA A. COYNE-FAGUE in her capacity as DIRECTOR, RHODE ISLAND DEPARTMENT OF CORRECTIONS,<br>    Defendants. | C.A. No. 16-396-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Christine Imbriglio served as Acting Assistant Administrator of Probation and Parole in the Rhode Island Department of Corrections (RIDOC) for two years. Ms. Imbriglio, a Hispanic female, applied for the permanent appointment to that position, competing during two rounds of interviews along with several other candidates. The RIDOC did not select Ms. Imbriglio for the permanent position and instead chose a white woman. Ms. Imbriglio now brings this suit under Title VII of the Civil Rights Act of 1964 and the Rhode Island Fair Employment Practices Act (RIFEPA), alleging that the RIDOC discriminated against her based on her national origin. Defendants have moved for summary judgment and for reasons set forth below, the Court GRANTS Defendants' Motion for Summary Judgment. ECF No. 27.

BACKGROUND

Ms. Imbriglio is a Hispanic female. She has worked for the RIDOC for twenty-four years, first as a probation officer and then as a probation supervisor. After a decade of being a supervisor in the department, Ms. Imbriglio was appointed to the position of acting Assistant Administrator of Probation and Parole ("Assistant Administrator") when the incumbent retired. A year and a half later, the RIDOC began accepting applications for the position of permanent Assistant Administrator. There were about sixty applicants for the position.

A four-person interview panel, chosen[1] and chaired by the RIDOC Assistant Director of Rehabilitative Services, Barry Weiner, reviewed all the applications and resumes and determined that ten applicants[2] who met the qualifications should be interviewed. Ms. Imbriglio was among the ten qualified applicants chosen to be interviewed.

The first stage of the interview process consisted of the interview, role-playing, and a skills assessment written assignment. The panel asked all the candidates the same questions. Scoring was based exclusively on the applicant's presentation during the interview, including content, presentation, and demeanor. Each panelist scored the candidate's responses to the interview questions, tallied the scores, and generated

---

[1] Department policy required one panel member to be a minority and one a female.
[2] One applicant later withdrew, leaving nine candidates interviewed by the panel.

2

a number total for each candidate. The total scores for each candidate determined who they would select for the second round of interviews.

When the committee completed the interviews and initial scoring, each panel member ranked the candidates according to their scores. The chairperson of the interview panel then compiled the scores for each candidate given by each panel member. The scores for the candidates were:

1. Applicant #1            331
2. Lisa Blanchette         286
3. Applicant #3            242
4. Christine Imbriglio     237
5. Applicant #5            186
6. Applicant #6            181
7. Applicant #7            173
8. Applicant #8            161
9. Applicant #9            131

They chose the top four candidates, including Ms. Imbriglio, for a second interview to be conducted by Mr. Weiner and the RIDOC Assistant Director Patricia Coyne-Fague. Mr. Weiner then selected a candidate to recommend to the RIDOC Director, then Ashbel T. Wall. Director Wall testified that, as the director of a large department, he

relied on the judgment of the chairperson of the interview panel, whom he had entrusted to give a recommendation.

Mr. Weiner recommended that the RIDOC director offer Lisa Blanchette, the applicant with the second highest score[3] after the first interview, the Assistant Administrator job. Mr. Weiner testified that this recommendation was based on the performance at the two rounds of interviews and "on the totality of circumstances of the knowledge we got from the first interview and the second interview." ECF No. 27-2 at ¶ 64. Ms. Blanchette accepted the job as Assistant Administrator and Ms. Imbriglio then returned to her probation supervisor position, which she continues to hold.

## STANDARD OF REVIEW

The Court can grant summary judgment only when it finds that no genuine dispute as to the material facts of the case exists and that the undisputed issues give rise to an entitlement to judgment as a matter of law. *See Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011). The Court must and will view evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. *Id.*

---

[3] The candidate who received the highest interview rating did not receive the position according to the State because they allege that during the second round of interviews, that candidate (Applicant #1 above) gave a response that "led the Department to conclude that she would not be appropriate for the position." ECF No. 27-2 at ¶ 70.

4

DISCUSSION

The two statutes on which Ms. Imbriglio bases her complaint provide essentially the same protection against discrimination at work based on national origin. Title VII of the Civil Rights Act proscribes employment discrimination on the basis of race, sex, and national origin; the RIFEPA is nearly identical in its remedial provisions. R.I. Gen. Laws § 42-112-1 (1990); R.I. Gen. Laws § 28-5-7 (2012).[4] The Rhode Island Supreme Court has applied the same analytical framework developed for Title VII cases to actions under RIFEPA. *Marley v. United Parcel Serv., Inc.*, 665 F. Supp. 119, 128 (D.R.I. 1987).

The United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), set forth a burden-shifting method to aid in the analysis. Analyzing an employment discrimination case can be challenging because of its subtleties; employment discrimination rarely comes with "smoking gun" evidence or eyewitness testimony. Under the *McDonnell Douglas* framework, a plaintiff must establish a prima facie case. The First Circuit has held that proving a prima facie case in a discrimination action is "not onerous." *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 15 n.4 (1st Cir. 1994). "If the plaintiff successfully bears this relatively light burden, we presume that the employer engaged in impermissible [] discrimination." *Id.* at 15 (citing *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). The burden then shifts to the employer, who must then state a legitimate,

---

[4] The State asserts that the Eleventh Amendment to the United States Constitution prohibits Ms. Imbriglio from bringing a RIFEPA case in federal court. The Court need not address that issue because of the outcome of this case.

5

nondiscriminatory reason for its decision; if the employer is successful, the inference of discrimination then disappears. The plaintiff is then required to show that the employer's stated reason is a pretext for discrimination. *See Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003). "The 'ultimate touchstone' of the *McDonnell Douglas* analysis is whether the employer's actions were improperly motivated by discrimination. Evidence that the employer's stated reasons for its actions are pretextual can be sufficient to show improper motive, and hence, allow the plaintiff to survive summary judgment." *Id.* at 213-14 (internal citations omitted).

1. Prima Facie Case of Discrimination

To establish a prima facie case, Ms. Imbriglio "bears the burden of showing that (1) she is a member of a protected class, (2) she was qualified for the open position for which she applied, (3) she was rejected for that position, and (4) someone holding similar qualifications received the position instead." *Goncalves v. Plymouth Cty. Sheriff's Dep't*, 659 F.3d 101, 105 (1st Cir. 2011) (citing *Ingram v. Brink's, Inc.*, 414 F.3d 222, 230 (1st Cir. 2005)). In its motion, the RIDOC concedes that Ms. Imbriglio meets the first three elements but alleges that she fails to satisfy the final element because she was passed over for the position in favor of a person who not only did not have similar qualifications for the job, but also had superior qualifications to Ms. Imbriglio.

*Similar Qualifications*

The RIDOC claims that because a diverse, four-person interview panel, asking the same questions of each candidate, ranked Ms. Blanchette higher than

6

Ms. Imbriglio, Ms. Imbriglio did not hold similar qualifications to Ms. Blanchette. The problem with the State's analysis is that to prove a prima facie case, a plaintiff must show that the she had similar or better qualifications than the hired individual, not similar or better interview skills.

"The court must decide 'whether a prudent person, looking objectively' at the plaintiff and her comparator 'would think them roughly equivalent,' and similarly qualified for the position." *Caraballo-Caraballo v. Corr. Admin.*, 892 F.3d 53, 60 (1st Cir. 2018) (quoting *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 451 (1st Cir. 2009)).

A review of the evidence shows that Ms. Imbriglio was at least similarly qualified, if not more so, than Ms. Blanchette. Ms. Imbriglio had two years of experience in the job, receiving commendations for her performance in the acting position and not receiving any negative reviews. Director Wall said she "discharged her responsibilities well." "This successful tenure in the [acting position] would allow a reasonable person to conclude that [plaintiff's] qualifications were similar—if not superior—to [the hired applicant]." *Id.* at 60.

Ms. Imbriglio had been a supervisor in probation for 10 years, she was a 24-year accomplished employee of the RIDOC. Director Wall had written letters of commendation for Ms. Imbriglio in the past, which were well deserved. ECF No. 30-3 at 27. Director Wall "express[ed] some concern that Ms. Imbriglio was acting in the position for a long time, she was a well-respected member of [the RIDOC] staff, has done a lot of good things, had letters of recommendation from people who the

7

department respects." ECF No. 30-3 at 20. In comparison, Ms. Blanchette had never served in the Assistant Administrator's role. She also had never even been a supervisor in the RIDOC. She had not scored high enough on an objective test to be "reachable" for appointment.

Based on this review, the Court concludes that Ms. Imbriglio has proved a prima facie case of discrimination. She has set forth enough facts to show that "someone holding similar [or less] qualifications received the position instead." *Goncalves*, 659 F.3d at 105. The Court now turns to see if the State has articulated a nondiscriminatory reason for not promoting Ms. Imbriglio to the permanent Assistant Administrator position.

### 2. Nondiscriminatory Reason

Because Ms. Imbriglio has met her prima facie burden, supporting an inference of intentional discrimination, "that inference shifts the burden of production to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision." *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010).

To satisfy this burden at the summary judgment stage, a defendant-employer needs to produce "enough competent evidence, *taken as true*, to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action[.]" *Bonilla-Ramirez v. MVM, Inc.*, 904 F.3d 88, 94 (1st Cir. 2018) (quoting *Ruiz v. Posadas de San Juan Assocs.*, 124 F.3d 243, 248 (1st Cir. 1997)) (emphasis in original). "This entails only a burden of production, not a burden

of persuasion; the task of proving discrimination remains the claimant's at all times." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991).

The State articulated a legitimate, nondiscriminatory reason for choosing Ms. Blanchette over Ms. Imbriglio. It set up an interview process made up of four individuals. Mr. Weiner testified that Ms. Blanchette consistently outperformed Ms. Imbriglio during the interview process. All four interviewers gave Ms. Blanchette higher scores than Ms. Imbriglio.

Whether this Court or anyone else would have made that same decision under these circumstances is irrelevant. "Courts may not sit as super personnel departments, assessing the merits–or even the rationality–of employers' nondiscriminatory business decisions." *Mesnick*, 950 F.2d at 825. The Court finds that the State has met its burden of producing a legitimate, nondiscriminatory reason for not making Ms. Imbriglio the permanent Assistant Administrator.

3. Pretext

The burden then shifts back to Ms. Imbriglio, who must prove that the State's reason for termination was a pretext for discriminatory motives. She has the burden to produce evidence (1) that the State fabricated the proffered reason for termination, and (2) that the State's true motive to terminate her was national origin discrimination. To show pretext, a plaintiff "must do more than cast doubt on the rationale proffered by the employer, the 'evidence must be of such strength and quality as to permit a reasonable finding that the ... [termination] was obviously or

manifestly unsupported.'" *Ruiz*, 124 F.3d at 248-49 (quoting *Brown v. Tr. of Bos. Univ.*, 891 F.2d 337, 346 (1st Cir. 1989)) (internal citation omitted).

The Court need not analyze whether Ms. Imbriglio met the first part of the requirement–that the State fabricated the proffered reason for not promoting Ms. Imbroglio because the Court finds that Ms. Imbriglio did not meet the second element–that the State's true motive in declining to promote her was to discriminate against her based on her national origin.

"An employer can hire one person instead of another for any reason, fair or unfair, without transgressing Title VII, as long as the hiring decision is not spurred by race, gender, or some other protected characteristic." *Foster v. Dalton*, 71 F.3d 52, 56 (1st Cir. 1995) (noting that "Title VII does not outlaw cronyism"); *see Ahmed v. Johnson*, 752 F.3d 490, 498 (1st Cir. 2014) (noting that sometimes an "employer may resort to a pretext to conceal an arguably inappropriate, albeit not unlawful, motivation, such as to curry favor with a friend or family member"); *Barry v. Moran*, 661 F.3d 696, 708 (1st Cir. 2011) ("an employment decision motivated by cronyism, not discrimination, would be 'lawful, though perhaps unsavory'") (quoting *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 587 (1st Cir.1999), *abrogated on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003)).

Ms. Imbriglio tries to make the connection between the hiring decision and her national origin by pointing to the dearth of minority administrators at RIDOC and its failure to live up to its affirmative action goals. While this may be relevant evidence within the context of other evidence, standing alone it cannot support a

10

finding of prohibitive discriminatory causation. *See Hicks v. Johnson*, 755 F.3d 738, 747 (1st Cir. 2014) (finding that plaintiff's attempt to show pretext by pointing to the lack of African-American workers was limited standing alone and did not permit a reasonable conclusion of discriminatory animus). After reviewing all the evidence in the light most favorable to Ms. Imbriglio, the Court finds that she did not present evidence on which a reasonable jury could conclude that her national origin was the reason the State did not award her the Assistant Administrator position.

It is true that prohibitive implicit and cognitive biases can permeate interviews, even when done by a diverse group of unbiased people. This is especially true when the employer disregards, as here, all other objective criteria for determining qualifications. "The Supreme Court has long recognized that unlawful discrimination can stem from stereotypes and other types of cognitive biases, as well as from conscious animus." *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 59 (1st Cir. 1999).[5] But Ms. Imbriglio has not developed the evidence–specifically there was no

---

[5] "With respect to the operation of stereotypes in the employment context, most scholars believe that stereotyping is a form of categorizing. Individuals draw lines and create categories based in part on race, gender and ethnicity, and the stereotypes they create can bias how they process and interpret information and how they judge other people. Linda Hamilton Krieger, *The Content of Our Categories: A Cognitive Bias Approach to Discrimination & Equal Employment Opportunity*, 47 Stan. L. Rev. 1161, 1188–90 (1995); *see also* Samuel R. Bagenstos, *The Structural Turn & The Limits of Antidiscrimination Law*, 94 Cal. L. Rev. 1 (2006); Samuel R. Bagenstos, *Implicit Bias & Antidiscrimination Law*, Harv. L. & Pol'y Rev. 477 (2007); Anthony G. Greenwald & Linda Hamilton Krieger, *Implicit Bias: Scientific Foundations*, 94 Cal. L. Rev. 945 (2006); [Melissa Hart, *Subjective Decision Making & Unconscious Discrimination*, 56 Ala. L. Rev. 741, 742 (2005)]; Christine Jolls & Cass Sunstein, *The Law of Implicit Bias*, 94 Cal. L. Rev. 969, 986 (2006); Amy L. Wax, *Discrimination As*

expert witness testimony proffered on the subject —that would allow a jury to consider implicit bias here. *See, e.g., Martin v. F.E. Moran, Inc.*, No. 13 C 3526, 2018 WL 1565597, at *20 (N.D. Ill. Mar. 30, 2018) (social psychological expert opined about the potential relevance of implicit bias). Without expert testimony, or other admissible testimony to support the connection between the State's decision and Ms. Imbriglio's national origin, her claim must fail.

CONCLUSION

Ms. Imbriglio did not prove that her termination was a pretext for national origin discrimination, therefore this Court GRANTS Defendants' Motion for Summary Judgment. ECF No. 27.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

April 23, 2019

---

*Accident*, 74 Ind. L.J. 1129 (1999)." *Kimble v. Wisconsin Dep't of Workforce Dev.*, 690 F. Supp. 2d 765, 776 (E.D. Wis. 2010).